# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| ANDREW J. DEPINET, | ) | CASE NO. 3:14-cv-01366 |
| | ) | |
| Petitioner, | ) | JUDGE JOHN R. ADAMS |
| | ) | |
| v. | ) | MAGISTRATE JUDGE GREG WHITE |
| | ) | |
| JASON BUNTING, Warden | ) | |
| | ) | |
| Respondent. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |

Petitioner Andrew J. Depinet ("Depinet"), challenges the constitutionality of his conviction in the case of *State v. Depinet*, Seneca County Court of Common Pleas Case No. 2011-CR-0288.  Depinet, represented by counsel, filed his Petition for a Writ of Habeas Corpus (ECF No. 1) pursuant to 28 U.S.C. § 2254 on June 23, 2014.  On September 29, 2014, Warden Jason Bunting ("Respondent") filed his Answer/Return of Writ.  (ECF No. 7.)  Depinet filed a Traverse on November 28, 2014.  (ECF No. 11.)  For reasons set forth in detail below, it is recommended that Depinet's petition be DENIED as procedurally defaulted.

## I.  Summary of Facts

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court, factual determinations made by state courts are presumed correct.  28 U.S.C. § 2254(e)(1); *see also Franklin v. Bradshaw*, 695 F.3d 439, 447 (6th Cir. 2012); *Montgomery v.*

*Bobby*, 654 F.3d 668, 701 (6ᵗʰ Cir. 2011).  The state appellate court summarized the facts

underlying Depinet's conviction as follows:

> [*P4]  Depinet entered a not guilty plea and a three-day jury trial was held on May
> 10, 11, and 14, 2012.  Witnesses for the State included Deputy Weinreskiel and
> Detective Reinbolt, two officers who had investigated the charges and who had
> interviewed D.K. and Depinet concerning the allegations. A tape of Detective
> Reinbolt's initial interview with Depinet was played in court. (Exhibit 1)

> [*P5]  The State's main witness was D.K., who testified about his relationship
> with Depinet and what had occurred during the period of April, May, and June of
> 2011, when Depinet was 19 and D.K. was 12.  During this time period, Depinet
> began having conversations with D.K. about  sexually related topics. (Tr. 142).
> D.K. testified that Depinet asked to see D.K.'s penis.  At first, D.K. told him no,
> but eventually showed Depinet his penis.  Soon after this occurred, Depinet began
> touching D.K.'s penis and would "stroke" it.  (Tr. 145-147)  This occurred several
> times when D.K. was traveling with Depinet in his car.  Once, when D.K. was
> assisting with the concession trailer at the Seneca County Fairgrounds, they were
> both inside the closed trailer and Depinet asked D.K. to take his pants down so he
> could see his penis.  He then asked to touch and suck on D.K.'s penis, and he
> attempted to place his mouth on the penis. (Tr. 147-152)

> [*P6]  Eighteen different character witnesses testified on behalf of the defense.
> The trial court heard testimony from Depinet's co-workers (from Kroger and the
> concession business), neighbors, relatives, friends, school personnel, and parents
> of his friends.  The character witnesses testified that Depinet was a good student
> and employee; a conscientious and law-abiding citizen; and a helpful, caring, and
> respectable person.  The testimony established that the witnesses felt he was very
> trustworthy and no one had ever seen or suspected any inappropriate sexual
> contact between Depinet and young boys.  They also testified that he was truthful
> and honest.

> [*P7]  Depinet testified on his own behalf and denied all of the charges.  He
> testified that he had "never solicited [D.K.] or any minor for that reason to engage
> in any sexual activity." (Tr. 428)  Depinet did acknowledge that, on the tape from
> when he was questioned by Detective Reinbolt, he had said that he had briefly
> touched D.K.'s penis, outside his clothing, one time when they were in Wal-Mart.
> (Tr. 416)  However, Depinet claimed that it was it was D.K. who took Depinet's
> hand and placed it there, and that he had immediately objected and pulled away.
> (Tr. 416-420)

> [*P8]  After the defense rested its case, the State called two rebuttal witnesses,

James and Tyler.  Both boys had known Depinet from school several years earlier when they were in the band. James was 15 years old at the time, and Tyler was 13. Depinet was 17 or 18 years old at the time of his friendship with James, and he was a junior in high school when he was involved with Tyler, who was then in the seventh grade.  They testified that they had been friends with Depinet and would go places with him, like the movies and bowling, and sometimes they would help Depinet with his concession trailer.  James and Tyler testified regarding Depinet's behavior with them, including testimony that Depinet had asked to see their penises and had touched their penises, even offering money to do so. (Tr. 458-510)

[*P9]  The jury found Depinet guilty on all four counts.  The trial court sentenced Depinet to prison for five years on count one, and four years each on counts two, three and four. Counts one and two were to be served concurrently with each other. Counts three and four were also to be served concurrently with each other, but consecutively to the sentences in counts one and two, for a total aggregate prison term of nine years.

*State v. Depinet*, 2013-Ohio-1850 at ¶¶4-9, 2013 Ohio App. LEXIS 1732 (Ohio Ct. App., May 6, 2013).

## II.  Procedural History

### A.    Conviction

On December 14, 2011, a Seneca County Grand Jury charged Depinet with one count of attempted rape in violation of Ohio Revised Code ("O.R.C.") §§ 2923.02(A), (E)(1) and 2907.02(A)(1)(b),(B), two counts of gross sexual imposition in violation of O.R.C. § 2907.05(A)(4),(C)(2), and one count of importuning in violation of O.R.C. § 2907.07(A),(F)(2). (ECF No. 7-1, Exh. 1.)  Depinet pleaded not guilty.  (ECF No. 7-1, Exh. 2.)

Prior to trial, Depinet filed a motion *in limine* seeking to bar the State from introducing any evidence that: (1) Depinet had a civil protective order proceeding commenced against him; (2) Depinet had engaged in sexual behavior towards State's witness, J.M.; (3) and, Depinet had engaged in sexual acts with J.M.  (ECF No. 7-1, Exh.5.)  After a hearing, the trial court

-3-

conditionally granted the motion.  (ECF No. 7-1, Exh. 6.)

On May 12, 2014, a jury found Depinet guilty as charged.  (ECF No. 7-1, Exh. 7.)  On

May 25, 2012, the trial court sentenced Depinet to an aggregate prison term of nine years.[1]  (ECF

No. 7-1, Exh. 8.)

**B.  Direct Appeal**

On August 22, 2012, Depinet, through new counsel, filed a Notice of Appeal with the

Court of Appeals for the Third Appellate District ("state appellate court") raising the following

assignments of error.

1.  In an abuse of its discretion, the trial court reversibly erred by allowing the testimonies of two rebuttal witnesses for the state, whose testimonies were false and very damaging to the Defendant-Appellant at trial; and therefore the allowance of said testimonies was not harmless error, and was in violation of Rule 404(B) and Rule 608 of the Ohio Rules of Evidence, and also was in violation of the Defendant-Appellant's fundamental and substantial rights to a fair jury trial and to due process of law, under the Sixth and Fourteenth Amendments to the Constitution of the United States, and under Article I, Section 5 of the Constitution of the State of Ohio.

2.  In an abuse of its discretion, the trial court reversibly erred by denying the Defendant-Appellant's motion for a new trial, with regard to juror misconduct and with regard to the trial court allowing the false and very damaging testimonies of two rebuttal witnesses for the state, in violation of Rule 33(A)(1), (2), (3) and (5) of the Ohio Rules of Criminal Procedure, and also in violation of the defendant-appellant's fundamental and substantial rights to a fair jury trial and to due process of law, under the Sixth and Fourteenth Amendments to the Constitution of the United States, and under Article I, Section 5 of the Constitution of the State of Ohio.

3.  In a violation of his fundamental and substantial rights under the Sixth and Fourteenth Amendments to the Constitution of the United States, and under Article I, Section 10 of the Constitution of the State of Ohio, the Defendant-

---

[1]  A post-trial motion seeking a new trial was denied.  The motion was premised on an allegation of improper juror contact and trial error stemming from the admission of character rebuttal testimony introduced by the State.  (ECF No. 7-1, Exhs. 9-11.)

> Appellant was denied effective assistance of counsel at his jury trial, wherein a collective accumulation of statements, questions, decisions, and arguments, by defense counsel during the jury trial, unrelated to professionally reasonable strategy, including a last, but certainly not least, decisively counterproductive rush-to-judgment exhortation to the trier of facts jury to conclude its deliberation and render its verdicts to a four-count indictment in the remainder of one day, by bedtime; would so collectively and decisively convey to any reasonable trier of facts, as being pejoratively indicative of casting both presumptive and implied guilt, rather than innocence, upon the Defendant-Appellant, and thereby resulting in ineffective assistance of counsel.

(ECF No. 7-1, Exhs. 12 & 13.)

On May 6, 2013, Depinet's conviction was affirmed.  (ECF No. 7-1, Exh. 15.)

On June 16, 2014, Depinet, through new counsel, filed a Notice of Appeal and Motion for Delayed Appeal with the Supreme Court of Ohio.  (ECF No. 7-1, Exhs. 16 & 17.)  On September 3, 2014, the motion was denied and the appeal dismissed.  (ECF No. 7-1, Exh. 18.)

## C.  Federal Habeas Petition

On June 23, 2014, Depinet filed a Petition for Writ of Habeas Corpus and asserted the following grounds for relief:

> GROUND ONE: Trial counsel's comments throughout the trial implied that Mr. Depinet was guilty, and in the aggregate constituted ineffective assistance of counsel, violating Mr. Depinet's rights under the Sixth and Fourteenth Amendments of the United States Constitution.

> GROUND TWO: Trial counsel's decision to elicit character testimony about the propensity of Mr. Depinet to engage in improper acts with juveniles was so recklessly misguided as to constitute ineffective assistance of counsel, violating Mr. Depinet's rights under the Sixth and Fourteenth Amendments to the United States Constitution.

> GROUND THREE: In the aggregate, trial counsel's conducting of the case was so deficient as to violate Mr. Depinet's rights under the Sixth and Fourteenth Amendments to the United States Constitution.

GROUND FOUR: The trial court's decision to admit the testimony of the State's two rebuttal witnesses was plain error and violated Mr. Depinet's right to a fair trial guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution.

(ECF No. 1.)

### III.  Exhaustion and Procedural Default

### A.  Exhaustion Standard

Petitioners must exhaust their state remedies prior to raising claims in federal habeas corpus proceedings.  *See* 28 U.S.C. § 2254(b),( c).  This requirement is satisfied "when the highest court in the state in which the petitioner was convicted has been given a full and fair opportunity to rule on the petitioner's claims."  *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990).  However, if relief is no longer available in state court, exhaustion can be rendered moot:  "If no remedy exists, and the substance of a claim has not been presented to the state courts, no exhaustion problem exists; rather, it is a problem of determining whether cause and prejudice exist to excuse the failure to present the claim in the state courts."  *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994); *see Buell v. Mitchell*, 274 F.3d 337, 349 (6th Cir. 2001).

### B.  Procedural Default Standard

Federal courts will not consider the merits of procedurally defaulted claims, unless the petitioner demonstrates cause for the default and prejudice resulting therefrom, or where failure to review the claim would result in a fundamental miscarriage of justice.  *See Lundgren v. Mitchell*, 440 F.3d 754, 763 (6th Cir.2006) (*citing Wainwright v. Sykes*, 433 U.S. 72, 87 (1977)).  A claim may become procedurally defaulted in two ways. *Id*.  First, a petitioner may procedurally default a claim by failing to comply with state procedural rules in presenting his claim to the

-6-

appropriate state court.  *Id.*; *see also Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). If, due to petitioner's failure to comply with the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate grounds for precluding relief, the claim is procedurally defaulted.[2]  *Id.*

Second, a petitioner may also procedurally default a claim by failing to raise and pursue that claim through the state's "ordinary appellate review procedures."  *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999).  If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, it is procedurally defaulted. *Engle v. Isaac*, 456 U.S. 107, 125 n. 28 (1982); *see also Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991); *Lovins*, 712 F.3d at 295 ("a claim is procedurally defaulted where the petitioner failed to exhaust state court remedies, and the remedies are no longer available at the time the federal petition is filed because of a state procedural rule.")  This second type of procedural default is often confused with exhaustion. Exhaustion and procedural default, however, are distinct concepts.  AEDPA's exhaustion requirement only "refers to remedies still available at the time of the federal petition."

---

[2]  In *Maupin*, the Sixth Circuit established a four-step analysis to determine whether a claim is procedurally defaulted.  785 F.2d at 135.  Under this test, the Court decides (1) whether the petitioner failed to comply with an applicable state procedural rule, (2) whether the state courts actually enforced the state procedural sanction, (3) whether the state procedural bar is an "independent and adequate" state ground on which the state can foreclose federal review, and (4) whether the petitioner has demonstrated "cause" and "prejudice."  *Id*. at 138-39; *Barkley v. Konteh*, 240 F.Supp.2d 708 (N.D. Ohio 2002).  "In determining whether a state court actually enforced a procedural rule, we apply the 'plain statement' rule of *Michigan v. Long*, 463 U.S. 1032, 103 S. Ct. 3469, 77 L. Ed. 2d 1201 (1983)."  *Lovins v. Parker*, 712 F.3d 283, 296 (6th Cir. 2013) ("a procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on the procedural bar.") (citations omitted).

*Engle*, 456 U.S. at 125 n. 28.  Where state court remedies are no longer available to a petitioner because he failed to use them within the required time period, procedural default and not exhaustion bars federal court review.  *Id*.  In Ohio, a petitioner is not entitled to raise claims in post-conviction proceedings where those claims could have been raised on direct appeal.  *Id*.  Thus, if an Ohio petitioner failed to raise a claim on direct appeal, which could have been raised, the claim is procedurally defaulted.  *Id*.

A claim is adequately raised on direct appeal if it was "fairly presented" to the state court.  To fairly present a claim to a state court a petitioner must assert both the legal and factual basis for his claim.  *See McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000).  Accordingly, a "petitioner must present his claim to the state courts as a federal constitutional issue--not merely as an issue arising under state law."  *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984).  A petitioner can take four actions in his brief which are significant to the determination as to whether a claim has been fairly presented as a federal constitutional claim: "(1) reliance upon federal cases employing constitutional analysis; (2) reliance upon state cases employing federal constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law."  *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003).

A petitioner's procedural default, however, may be excused upon a showing of "cause" for the procedural default and "actual prejudice" from the alleged error.  *See Maupin*, 785 F.2d at 138-39.  "Demonstrating cause requires showing that an 'objective factor external to the defense impeded counsel's efforts to comply' with the state procedural rule."  *Franklin v. Anderson*, 434

-8-

F.3d 412, 417 (6th Cir. 2006) (*quoting Murray v. Carrier*, 477 U.S. 478, 488 (1986)).
Meanwhile, "[d]emonstrating prejudice requires showing that the trial was infected with
constitutional error." *Id*.  Where there is strong evidence of a petitioner's guilt and the evidence
supporting petitioner's claim is weak, the actual prejudice requirement is not satisfied.  *See
United States v. Frady*, 456 U.S. 152, 172 (1982); *Perkins v. LeCureux*, 58 F.3d 214, 219-20 (6th
Cir. 1995); *Rust v. Zent*, 17 F.3d 155, 161-62 (6th Cir. 1994).  Prejudice does not occur unless
petitioner demonstrates "a reasonable probability" that the outcome of the trial would have been
different.  *See Mason v. Mitchell*, 320 F.3d 604, 629 (6th Cir. 2003) (*citing Strickler v. Greene*,
527 U.S. 263, 289 (1999)).

Finally, a petitioner's procedural default may also be excused where a petitioner is
actually innocent in order to prevent a "manifest injustice."  *See Coleman v. Thompson*, 501 U.S.
722, 749-50 (1991).  Conclusory statements are not enough – a petitioner must "support his
allegations of constitutional error with new reliable evidence-whether it be exculpatory scientific
evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at
trial."  *Schlup v. Delo*, 513 U.S. 298, 324 (1995)*;  See Jones v. Bradshaw*, 489 F.Supp.2d 786,
807 (N.D.Ohio 2007).

### 1.  Application to Depinet

Respondent asserts that all four of Depinet's grounds for relief are procedurally defaulted,
because none of them were timely raised before the Supreme Court of Ohio.  (ECF No. 7 at 9-
11.)  As stated above, on June 16, 2014, Depinet filed a motion for a *delayed* appeal in the Ohio
Supreme Court asserting that his original appellate counsel convinced him that a direct appeal to
said court was unwinnable and that he should file a habeas petition instead.  (ECF No. 7-1, Exh.

-9-

17.)  Respondent contends that the Supreme Court of Ohio's decision denying his motion for a delayed appeal and dismissing the matter is considered a procedural ruling sufficient to bar habeas review.  *See Bonilla v. Hurley*, 370 F.3d 494, 497 (6th Cir. 2004) (*per curiam*), *cert. denied*, 543 U.S. 989, 125 S. Ct. 506, 160 L. Ed. 2d 375 (2004).

Under its procedural rules, the Ohio Supreme Court has jurisdiction over timely appeals which are made within 45 days of the state appellate court's decision.  *See* Ohio S.Ct.Prac.R. 6.01(A)(1) & 7.01(A)(1).[3]  The Ohio Supreme Court may, in its discretion, take jurisdiction over untimely felony appeals upon motion for leave to file a delayed appeal pursuant to Ohio S.Ct.Prac.R. 7.01(A)(4).  However, where the delayed appeal is not allowed, the Sixth Circuit Court of Appeals has held that even an unexplained decision denying leave to file an untimely appeal is presumed to enforce any applicable procedural bar.

> This case turns upon whether the Ohio Supreme Court entry denying Bonilla's motion for leave to file a delayed appeal constitutes a procedural ruling sufficient to bar federal court review of Bonilla's habeas corpus petition.  Upon examination of the Ohio Supreme Court Rules, we conclude that it does.  The Ohio Supreme Court Rules require a motion for a delayed appeal to state "the date of entry of the judgment being appealed and adequate reasons for the delay." Ohio Sup.Ct. R. II, Section 2(A)(4)(a).  In addition, the motion must be accompanied by a supporting affidavit and a "copy of the decision being appealed." *Id*.  A motion for a delayed appeal is not required to contain the actual claims and supporting arguments sought to be presented on appeal. *Id*.  Instead, only when "the Supreme Court grants a motion for delayed appeal," is the appellant required to "file a memorandum in support of jurisdiction." Ohio Sup. Ct. R. II, Section 2(A)(4)(c). **Thus, the applicable Ohio court rules indicate that the denial of a motion for a delayed appeal is a procedural ruling, not a ruling on the merits.**

*Bonilla*, 370 F.3d at 497 (emphasis added); *accord Baker v. Bradshaw*, 495 Fed. App'x. 560, 565

---

[3]  The Ohio Supreme Court adopted new rules of practice, which became effective on January 1, 2013.  The previous rule concerning time limits, as well as delayed appeals, was contained in Ohio Sup.Ct. R. Section 2.2(A).

(6th Cir. 2012) ("the timeliness requirements for an appeal to the Ohio Supreme Court ...

constitute adequate and independent state grounds to preclude hearing an untimely claim on the

merits."); *Carman v. Ohio*, 2015 U.S. Dist. LEXIS 32119 (N.D. Ohio Mar. 16, 2015);

*Crutchfield v. Warden*, 2014 U.S. Dist. LEXIS 111106 (S.D. Ohio Aug. 11, 2014) (finding that

where the petitioner's motion for delayed appeal before the Ohio Supreme Court was denied, the

petitioner must demonstrate cause for his default and actual prejudice to avoid dismissal).

This Court finds that Depinet's failure to file a *timely* appeal to the Ohio Supreme Court,

coupled with that court's denial of a motion for delayed appeal, resulted in a procedural default.

Therefore, absent a showing of cause and prejudice sufficient to excuse the default, the petition

should be dismissed.

## 2.  Cause and Prejudice

In his traverse, Depinet argues that his default should be excused based on the ineffective

assistance of appellate counsel.  (ECF No. 11 at 4-5.)  Ineffective assistance of appellate counsel

can constitute cause sufficient to excuse a procedural default.  *Landrum v. Mitchell*, 625 F.3d

905, 916 (6th Cir. 2010) *cert. denied*, 132 S. Ct. 127, 181 L. Ed. 2d 49 (2011); *Howard v.

Bouchard*, 405 F.3d 459, 478 (6th Cir. 2005).  Nonetheless, "an ineffective-assistance-of-counsel

claim asserted as cause for the procedural default of another claim can itself be procedurally

defaulted." *Hodges v. Colson*, 727 F.3d 517, 530 (6th Cir. 2013) (*quoting Edwards v. Carpenter*,

529 U.S. 446, 453, 120 S. Ct. 1587, 146 L. Ed. 2d 518 (2000)).  As explained by the Sixth

Circuit Court of Appeals:

> The "cause" standard in procedural-default cases requires the petitioner to show
> that "some objective factor external to the defense impeded counsel's efforts" to
> raise a claim in the state courts. *McCleskey v. Zant*, 499 U.S. 467, 493, 111 S.Ct.

-11-

1454, 113 L.Ed.2d 517 (1991) (internal quotation marks omitted).  Such factors may include interference by officials, an attorney error rising to the level of ineffective assistance of counsel, or a showing of a factual or legal basis for a claim that was not reasonably available.  *Id.* at 493–94, 111 S.Ct. 1454.  "[A] procedurally defaulted ineffective-assistance-of-counsel claim can serve as cause to excuse the procedural default of another habeas claim **only if the habeas petitioner can satisfy the 'cause and prejudice' standard with respect to the ineffective assistance claim itself.**"  *Edwards v. Carpenter*, 529 U.S. 446, 450–51, 120 S.Ct. 1587, 146 L.Ed.2d 518 (2000).

*Wogenstahl v. Mitchell*, 668 F.3d 307, 321 (6th Cir. 2012) (emphasis added).

There is no constitutional right to counsel in a direct appeal to the Ohio Supreme Court, *see Evitts v. Lucey,* 469 U.S. 387, 394 (1985); *Ross v. Moffitt,* 417 U.S. 600, 609-10 (1974), nor is there such a right on collateral review, including a 26(B) application to reopen, *see Lopez v. Wilson*, 426 F.3d 339, 352 (6th Cir. 2005).[4]  Here, Depinet cannot use appellate counsel's alleged ineffectiveness to excuse the procedural default of his claims.

---

[4]  This Court recognizes that the Sixth Circuit has ruled that appellate counsel's performance is constitutionally ineffective when counsel fails to notify his client of the results of an appeal of right in a prompt manner so as to permit a timely discretionary appeal to be filed.  *Smith v. State of Ohio Rehab. and Corrections*, 463 F.3d 426, 433 (6th Cir. 2006), *reh'g. and reh'g en banc,* (2007).  Such ineffectiveness is cause for a procedural default in not filing a timely appeal with the Ohio Supreme Court.  *Id.; see, e.g., Edwards*, 529 U.S. at  451; *Murray*, 477 U.S. at 488-89.  Appellate counsel's duties do not terminate the moment the court of appeals hands down its decision.  "Because a defendant is entitled to effective assistance of counsel on direct appeal, such an individual must be accorded effective assistance of counsel throughout *all* phases of that stage of the criminal proceedings."  *Smith*, 463 F.3d at 433.  A litigant must have, at a minimum, timely notice that his appeal was decided and that the clock for a discretionary appeal has started running.  "Providing that information is the responsibility of the appellate attorney.  Anything short of requiring the appellate attorney to discharge his [ ] responsibilities creates a legal 'Bermuda triangle' where even potentially valid claims disappear without ever being heard."  *Nix v. Warden, Warren Correctional Institution*, 2007 WL 2326866 (S.D. Ohio 2007) (*citing Foster v. Money*, 2006 WL 3342725, (N.D. Ohio 2007)).  Depinet, however, does not allege that appellate counsel failed to inform him of the filing deadlines.  Rather, he avers that he "elected" not to file a discretionary appeal based on counsel's advice that it was unwinnable.

-12-

Notably, Depinet does *not* argue that he was unaware of the opportunity for an appeal to the Supreme Court of Ohio, *nor* does he allege that he was *not* informed of the applicable time limits.  Rather, Depinet's habeas petition expressly states that "Depinet elected not to file an appeal to the Ohio Supreme Court" based on appellate counsel's advice.  (ECF No. 1 at ¶¶20-21.)

Depinet's claim of ineffective assistance of appellate counsel is itself defaulted, because it was not timely raised on direct appeal to the Ohio Supreme Court, nor was it raised in a timely Rule 26(B) application to reopen.  Depinet's traverse recognizes that a Rule 26(B) application would be untimely.[5]  However, neither Depinet's petition nor his traverse offers any meaningful explanation as to why he failed to file an application to reopen his appeal pursuant to Rule 26(B).  In this Court's view, Depinet cannot claim appellate counsel's alleged ineffectiveness excused him from the requirement that he seek to reopen his appeal pursuant to Ohio's well-established rules of appellate procedure.  While navigating state procedural rules admittedly can be daunting for those untrained in the law, in this Court's experience, *pro se* habeas petitioners routinely file Rule 26(b) applications in state court despite no legal training and often having only a limited education.

Depinet also makes some cursory references to recent United States Supreme Court decisions in *Martinez v. Ryan*, 566 U.S. ___, 132 S. Ct. 1309; 182 L. Ed. 2d 272 (2012) and *Trevino v. Thaler*, 569 U.S. ___, 133 S. Ct. 1911,185 L. Ed. 2d 1044 (2013), but fails to explain

---

[5] Ohio Appellate Rule 26(B) is a state remedy that allows a defendant to reopen his direct appeal if he was harmed by ineffective assistance of appellate counsel.  Ohio App. R. 26(B).  A case reopened pursuant to this rule is also known as a "Murnahan" appeal.  *See State v. Murnahan*, 63 Ohio St. 3d 60, 584 N.E.2d 1204 (Ohio 1992).

-13-

how those decisions are applicable to the case at bar.[6]  (ECF No. 11 at 4-5.)  The Sixth Circuit

has unequivocally concluded "that a Rule 26(B) application to reopen is part of the collateral,

postconviction process rather than direct review."  *Lopez*, 426 F.3d at 351-352 (*citing Lambert v.

Ross Corr.*, 81 Fed. App'x 1 (6th Cir. 2003)).  To the extent Depinet maintains that appellate

counsel's ineffectiveness should excuse Depinet's failure to file a Rule 26(B) application, the

Sixth Circuit Court of Appeals has rejected arguments that *Martinez* and *Trevino* apply to claims

of ineffective assistance of *appellate* counsel in a post-conviction proceeding:

> At the district court, [petitioner] Hodges argued that various causes could excuse
> his procedural default, including ineffective assistance of appellate counsel,
> ineffective assistance of post-conviction counsel, reliance on Thompson's
> responses in voir dire, and Hodges's inability to locate Thompson before the
> post-conviction evidentiary hearing.  Ineffective assistance of counsel can
> constitute cause for a procedural default.  *See Carrier*, 477 U.S. at 492.  However,
> "an ineffective-assistance-of-counsel claim asserted as cause for the procedural
> default of another claim can itself be procedurally defaulted."  *Edwards v.
> Carpenter*, 529 U.S. 446, 453, 120 S. Ct. 1587, 146 L. Ed. 2d 518 (2000).  In
> post-conviction proceedings, Hodges raised a claim of ineffective assistance of
> appellate counsel regarding Thompson's competence.  He did not claim that
> appellate counsel were ineffective for failing to raise the claim that Thompson
> engaged in misconduct.  Accordingly, Hodges cannot rely on ineffective
> assistance of counsel to establish cause to excuse his procedural default.
>
> Nor can Hodges rely on ineffective assistance of post-conviction counsel to
> establish cause to excuse his default, even if this holding is not so clear-cut as it
> once would have been.  Historically, the federal courts have held that there is no

---

[6]  The Court notes that Ohio's appellate procedures are unlike those in Arizona and
Texas, which were addressed by *Martinez* and *Trevino* respectively.  In *Martinez*,
default of an ineffective assistance of trial counsel claim was excused because Arizona
did not permit a defendant to raise such a claim on direct review.  132 S. Ct. at 1313.  In
*Trevino*, while the State of Texas technically permitted a defendant to raise such a claim
on direct review, "Texas courts in effect have directed defendants to raise claims of
ineffective assistance of trial counsel on collateral, rather than direct, review."  133 S. Ct.
at 1919.  It is indisputable that Ohio courts permit ineffective assistance of trial counsel
claims on direct review.  Furthermore, Depinet was represented by new counsel on direct
review, and claims of ineffective assistance of trial counsel were indeed raised.

constitutional right to an attorney in post-conviction proceedings, and that
ineffective assistance of post-conviction counsel therefore cannot establish cause
for procedural default. *See Carpenter*, 529 U.S. at 450-53; *Coleman*, 501 U.S. at
752; *Landrum*, 625 F.3d at 919. But the Supreme Court recently held in *Martinez
v. Ryan*, 132 S. Ct. 1309, 182 L. Ed. 2d 272 (2012), that there is a "narrow
exception" to *Coleman*: "Inadequate assistance of counsel at initial review
collateral proceedings may establish cause for a procedural default of a claim of
ineffective assistance at trial." *Id*. at 1315 (emphasis added). This "equitable" —
as opposed to constitutional — exception is premised on *Coleman* itself, a case in
which the Court declined to address the situation in which "state collateral review
is the first place a prisoner can present a challenge to his conviction." *Coleman*,
501 U.S. at 755. The *Martinez* Court held that in such situations ineffective
assistance of post-conviction counsel may be raised as cause to excuse procedural
default because "the collateral proceeding is in many ways the equivalent of a
prisoner's direct appeal as to the ineffective assistance claim." *Martinez*, 132 S.
Ct. at 1317.

The Court in *Martinez* purported to craft a narrow exception to *Coleman*. We will
assume that the Supreme Court meant exactly what it wrote: "*Coleman* held that
an attorney's negligence in a postconviction proceeding does not establish cause,
and this remains true except as to initial-review collateral proceedings for claims
of ineffective assistance of counsel at trial." *Id*. at 1316 (emphasis added). The
Supreme Court further insisted:

> The rule of *Coleman* governs *in all but the limited circumstances
> recognized here*. The holding in this case *does not concern attorney
> errors in other kinds of proceedings*, including appeals from
> initial-review collateral proceedings, second or successive collateral
> proceedings, and petitions for discretionary review in a State's appellate
> courts. It does not extend to attorney errors in any proceeding beyond the
> first occasion the State allows a prisoner to raise a claim of ineffective
> assistance at trial, even though that initial-review collateral proceeding
> may be deficient for other reasons. In addition, the limited nature of the
> qualification to *Coleman* adopted here reflects the importance of the
> *right to the effective assistance of trial counsel* and Arizona's decision to
> bar defendants from raising ineffective-assistance claims on direct
> appeal. Our holding here addresses *only* the constitutional claims
> presented in this case, where the State barred the defendant from raising
> the claims on direct appeal.

*Id*. (internal citations omitted; emphases added).

*Hodges v. Colson*, 727 F.3d 517, 530-531 (6th Cir. 2013) (footnotes omitted); *see also Moore v.*

*Mitchell*, 708 F.3d 760, 785 (6ᵗʰ Cir. 2013), *cert. denied*, 134 S. Ct. 693, 187 L. Ed. 2d 559

(2013) (observing that *Martinez* was inapplicable, in part, because Ohio does permit ineffective

assistance of trial counsel claims to be made on direct appeal); *Henness v. Bagley*, 766 F.3d 550,

557 (6ᵗʰ Cir. 2014) ("this court has concluded that *Martinez* does not apply in Ohio because Ohio

permits ineffective-assistance-of-counsel claims on direct appeal... Without deciding the issue,

this court also has questioned whether *Trevino* applies in Ohio.") (*citing McGuire v. Warden,

Chillicothe Corr. Inst.*, 738 F.3d 741 (6ᵗʰ Cir. 2013)).

In *McGuire*, the Sixth Circuit addressed the potential applicability of *Trevino* to Ohio, but

did not decide the matter:

> Third, while we need not determine whether *Trevino* applies to Ohio cases, it is
> not obvious that *Trevino* applies here.  **Ohio law appears to contemplate two
> kinds of ineffective assistance of counsel claims, those based only on evidence
> in the trial record and those based in part on evidence outside the record.**
> Ohio also appears to expect appellate counsel to recognize the types of claims and
> follow the proper procedure.  As to the first type of claim, *res judicata* bars an
> ineffective assistance of counsel claim that relies entirely on evidence inside the
> trial record, since such a claim could have been brought on direct appeal.  This is
> because in Ohio,
>
> > [u]nder the doctrine of *res judicata*, a final judgment of conviction bars
> > the convicted defendant from raising and litigating in any proceeding,
> > except an appeal from that judgment, any defense or any claimed lack of
> > due process that was raised or could have been raised by the defendant at
> > the trial which resulted in that judgment of conviction or on an appeal
> > from that judgment.
>
> *State v. Perry*, 10 Ohio St. 2d 175, 226 N.E.2d 104, 108 (Ohio 1967).  Since it is
> "a bedrock principle of appellate practice in Ohio . . . that an appeals court is
> limited to the record of the proceedings at trial," *Morgan v. Eads*, 104 Ohio St.
> 3d 142, 2004 Ohio 6110, 818 N.E.2d 1157, 1159 (Ohio 2004), the second type of
> claim, ineffective assistance of counsel contentions that rely on evidence outside
> the record, cannot be brought on direct review.  In *State v. Cole*, the Ohio
> Supreme Court explained:

-16-

> Generally, the introduction in [a postconviction] petition of evidence *dehors* the record of ineffective assistance of counsel is sufficient, if not to mandate a hearing, at least to avoid dismissal on the basis of *res judicata*.  In the case at bar, however, the allegations outside the record upon which appellant relies appear so contrived, when measured against the overwhelming evidence in the record of trial counsel's competence, as to constitute no credible evidence and, thus, to justify the trial court's application of the principles of *res judicata*.

2 Ohio St. 3d 112, 2 Ohio B. 661, 443 N.E.2d 169, 171 (Ohio 1982).  However, "[a] petition for postconviction relief is subject to dismissal without a hearing when the petitioner fails to submit with his petition evidentiary material setting forth sufficient operative facts to demonstrate substantive grounds for relief." *State v. Sowell*, 73 Ohio App. 3d 672, 598 N.E.2d 136, 142 (Ohio Ct. App. 1991); see also Ohio Rev. Code Ann. § 2953.21(C).

Thus, Ohio law suggests two different ways to look at *Trevino*.  On the one hand, certain claims can for practical purposes only be brought in an initial-review collateral attack in a post-conviction petition.  And *Trevino* recognized that a "meaningful opportunity to present a claim of ineffective assistance of trial counsel" includes "the need to expand the trial court record." 133 S. Ct. at 1921. Ohio courts recognize that claims requiring evidence outside the record may only be meaningfully litigated in post-conviction proceedings and may loosen ordinary *res judicata* principles in such cases: "although ineffective assistance of counsel ordinarily should be raised on direct appeal, *res judicata* does not bar a defendant from raising this issue in a petition for postconviction relief if the claim is based on evidence outside the record[,] . . . even when the issue of ineffective assistance of counsel was raised on direct appeal."  *State v. Richmond*, 2012-Ohio-2511, No. 97616, 2012 WL 2047991, at *1 (Ohio Ct. App. 2012) (*citing State v. Smith*, 17 Ohio St. 3d 98, 17 Ohio B. 219, 477 N.E.2d 1128, 1131 n.1 (Ohio 1985)).  Thus, in Ohio, if ineffective assistance cases are divided into two categories, one could argue that the category requiring evidence outside the record must be brought on collateral review in order for review to be meaningful.

**On the other hand, in the "ordinary" case, "ineffective assistance of counsel at mitigation, just like ineffective assistance at trial, is an issue that can be brought on direct appeal,"** *State v. Combs*, 100 Ohio App. 3d 90, 652 N.E.2d 205, 212 (Ohio Ct. App. 1994) (collecting cases), with a constitutionally required appellate attorney, *see Franklin v. Anderson*, 434 F.3d 412, 428 (6th Cir. 2006) (*citing Evitts v. Lucey*, 469 U.S. 387, 396, 105 S. Ct. 830, 83 L. Ed. 2d 821 (1985)); *see also State v. Davis*, 119 Ohio St. 3d 422, 2008 Ohio 4608, 894 N.E.2d 1221, 1226 (Ohio 2008); Ohio R. App. P. 26(B).  Indeed, such a claim was raised on McGuire's direct appeal, and was treated thoughtfully by the

-17-

> Supreme Court of Ohio on discretionary review, albeit as part of an ineffective assistance of appellate counsel claim. Arguably, then, the review of trial counsel ineffectiveness claims in Ohio is more "meaningful" than in Texas, because in Ohio there is "ordinarily" the availability of direct review with constitutionally required counsel, with the back-up of collateral attack where evidence outside the record is required. All of this shows that the application of *Trevino* to Ohio ineffective-assistance claims is neither obvious nor inevitable.

*McGuire v. Warden, Chillicothe Corr. Inst.*, 738 F.3d 741, 751-752 (6th Cir. 2013) (emphasis added); *cf. Franklin v. Robinson*, 2014 U.S. Dist. LEXIS 118167 (S.D. Ohio Aug. 25, 2014) (observing that "*Trevino* should not apply" to ineffective assistance of trial counsel claims "which depend virtually exclusively on record evidence")

Depinet's grounds for relief allege ineffective assistance of trial counsel based entirely upon counsel's actions and decisions *at trial*, and do not require evidence outside the record that could only be meaningfully litigated in post-conviction proceedings.[7] As such, Depinet's claims constitutes what the *McGuire* court called the "ordinary" case of ineffective assistance of trial counsel. Therefore, given the facts of this matter, this Court need not decide the general question of whether *Trevino* ever applies to Ohio's appellate and post-conviction rules. The Court, however, finds that in this particular case it does not.

Depinet was entitled to counsel on direct appeal wherein he was permitted to raise his claims of ineffective assistance of trial counsel based on the record. Though Depinet is clearly dissatisfied with the manner in which those claims were raised, he did not seek to reopen his appeal pursuant to Ohio Rule 26(B) and cannot deflect blame onto his appellate counsel for

---

[7] According to Depinet, his trial counsel was ineffective for: (1) making comments at trial that implied he was guilty; (2) deciding to call character witnesses – a decision that opened the door to allowing damaging testimony from State's witnesses whose testimony was otherwise inadmissible; and (3) "aggregate" decisions and actions "during the course of trial" that were misguided. (ECF No. 11.)

failing to do so.  As discussed by the Sixth Circuit in *Moore*, the general rule expressed by the United States Supreme Court in *Coleman* is that "[t]here is no constitutional right to an attorney in state post-conviction proceedings....  Consequently, a petitioner cannot claim constitutionally ineffective assistance of counsel in such proceedings."  *Coleman v. Thompson*, 501 U.S. 722, 752 (1991).  *Martinez* and *Trevino* did not abrogate this rule, but expressly stated that they were carving out a narrow exception to the rule announced in *Coleman*.  *See Martinez*, 132 S. Ct. at 1329 ("The rule of *Coleman* governs in all but the limited circumstances recognized here....  It does not extend to attorney errors in any proceeding beyond the first occasion the State allows a prisoner to raise a claim of ineffective assistance at trial.")  In *Trevino*, the Supreme Court simply applied the *Coleman* exception announced in its holding in *Martinez*, but it did not expand the holding beyond initial-review collateral proceedings raising ineffective assistance of trial counsel claims.  133 S. Ct. at 1921.  Depinet cites no binding decisions from the Unites States Supreme Court or the Sixth Circuit Court of Appeals suggesting that a second exception to *Coleman* applies excusing procedural default beyond an initial-review collateral proceeding.

Finally, while a petitioner's procedural default can also be excused where a petitioner is actually innocent in order to prevent a "manifest injustice" *Coleman*, 501 U.S. 722 at 749-50, Depinet has presented nothing that would justify this Court considering an actual innocence claim.

Therefore, the Court recommends that the instant petition be dismissed as procedurally defaulted.

### IV.  Conclusion

For the foregoing reasons, it is recommended that Depinet's Petition be DENIED.

/s/ Greg White
U.S. MAGISTRATE JUDGE


Date: April 30, 2015



### OBJECTIONS
**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).**